J-A12039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.A.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.C.D. | : | |
| | : | |
| Appellant | : | No. 1617 WDA 2016 |

Appeal from the Order Entered September 21, 2016
In the Court of Common Pleas of Lawrence County
Civil Division at No(s):  11645 of 2010 C.A.

BEFORE:   OLSON, SOLANO, and RANSOM, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 7, 2017**

A.C.D. ("Father") appeals the order dated September 16, 2016, and entered on September 21, 2016, awarding T.A.S. ("Mother") primary physical custody of the parties' minor, male child, A.M.S. ("Child").  The order also awarded partial physical custody to Father, in accordance with a schedule, and shared legal custody to the parties.  We affirm.

Mother and Father were never married.  Child was born in August 2010.  On October 20, 2010, Mother filed a complaint for custody of Child. On October 25, 2010, Father filed a counterclaim in custody.   In an order entered on November 17, 2010, as amended by an order entered on December 15, 2010, the trial court awarded Mother primary physical custody, Father partial physical custody in accordance with a schedule, and the parties shared legal custody.  Subsequent to December 15, 2010, a number of orders modifying the custody schedule were entered, including an

order entered on May 22, 2013, however, in each instance Mother retained primary physical custody of Child, Father had partial physical custody based on a schedule, and the parties shared legal custody.

On January 29, 2016, Father filed a petition to modify custody, requesting shared physical custody. After a continuance, the trial court held an evidentiary hearing on Father's petition on August 10, 2016 and August 11, 2016.

On August 10, 2016, Father presented the testimony of his current wife ("Stepmother") and her mother ("Paternal Step-Grandmother") N.T., 8/10/16, at 4-5. Paternal Step-Grandmother testified that Father and Stepmother have a son, L.D., born in 2012. *Id.* at 7. Father, Stepmother, Child, and L.D. plan to reside with Paternal Step-Grandmother, as they have sold their house. *Id.* at 5, 12. Paternal Step-Grandmother testified that her own mother, Child's paternal step-great-grandmother, already resides in her home. *Id.* Father also presented the testimony of Stephanie Muntean, the realtor who sold Father and Stepmother's previous home and has assisted them in seeking a new home in the Laurel School District. *Id.* at 28-33. Father's counsel then questioned Mother as if on cross-examination. Mother testified that she resides in the Laurel School District and that Child would be attending full-day kindergarten in the fall of 2016. *Id.* at 37-38, 45. Father testified on his own behalf. *Id.* at 51. Next, Father presented the testimony of Kelli Chaffee, a speech language therapist employed by Midwestern

Intermediate Unit IV who has been working with Child since January of 2016. *Id.* at 187-188.

At the hearing on August 11, 2016, Mother testified on her own behalf. Mother testified that Child's primary residence is with her. N.T., 8/11/16, at 4. Mother presented the testimony of her mother ("Maternal Grandmother"). *Id.* at 57. Mother also presented the testimony of her friend, B.M. *Id.* at 63. Father was called to testify on direct examination in rebuttal to Mother's testimony. *Id.* at 66.

The trial court set forth the factual background and procedural history of the case, from the evidence in the record, as follows:

> 1. [Mother] and [Father] are the natural parents of [Child,] who was born [in August of 2010].
>
> 2. The primary residence of [Child] since his birth has been with [] Mother. . . [in] New Castle, Pennsylvania.
>
> 3. [Father] is married and has a child of that marriage, [L.D.], who is 25 months younger than [Child]. [Father], [Stepmother], and [L.D.] have resided in Ellwood City. [Father] and [Stepmother] are in the process of closing the sale of their home in Ellwood City and are temporarily residing with [Paternal Step-Grandmother]. [Father] and [Stepmother] are looking for a home in the Laurel School District, where [Mother] resides.
>
> 4. [Child] has a good and healthy relationship with both of his parents and is a well[-]adjusted, healthy, and happy child.
>
> 5. [Mother] is employed by the Intermediate Unit as a bookkeeper/accountant and during the summer months works Monday through Thursday from 7:00 a.m. until 4:30 p.m. During the school year, [Mother] works five days per week, from 8:00 a.m. to 4:00 p.m. and has a work schedule that mirrors [Child's] school schedule.

6. [Father] works as a truck driver for Estes and leaves for work between 7:30 p.m. and 8:00 p.m. and returns home approximately 4:30-5:00 a.m. on the next day.

7. When [Mother] is unavailable to watch her son, [Maternal Grandmother] is the primary babysitter. When [Father] is working, [Stepmother] or [Paternal Step-Grandmother] babysits [Child]. During [Child's] lifetime, he has not been enrolled in day care and when in either parent's home, has been watched by a competent relative.

8. In the fall, [Child] will be attending full time kindergarten in the Laurel School District.

Trial Court Opinion and Order, 9/21/16, at 1-2.

In the order entered on September 21, 2016, the trial court awarded Mother primary physical custody of Child, awarded partial physical custody to Father in accordance with a schedule, and awarded shared legal custody to the parties.

On October 11, 2016, Father filed a motion for reconsideration of the September 16, 2016 decision. The trial court heard argument on the motion and entered an order denying relief on October 11, 2016. On October 21, 2016, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises the following issues:

A. Whether the trial court erred in failing to set forth its reasoning for reducing Father's custody time with [] [C]hild?

B. Whether the trial court abused its discretion in failing to award shared custody and in reducing Father's custody time with [] [C]hild?

C. Whether some of the trial court's findings of fact contained in the [o]rder of [c]ourt entered on September 21, 2016 fail to be supported by the record?

D. Whether the trial court abused its discretion in entering a custody order which is contrary to its analysis of the 23 Pa.C.S.[A.] § 5328 factors?

Father's Brief, at 9.

In custody cases under the Child Custody Act ("the Act"), 23 Pa.C.S.A.

§§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**Id.** at 18-19 (quotation and citations omitted).

Regarding the definition of an abuse of discretion, this Court has

stated: "[a]n abuse of discretion is not merely an error of judgment; if, in

reaching a conclusion, the court overrides or misapplies the law, or the

judgment exercised is shown by the record to be either manifestly

unreasonable or the product of partiality, prejudice, bias or ill will, discretion

has been abused." **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa. Super.

2007) (quotation omitted).

With any custody case decided under the Act, the paramount concern

is the best interests of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338. Section

5323 of the Act provides for the following types of awards:

> **(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:
>
> > (1) Shared physical custody.
> >
> > (2) Primary physical custody.

- 6 -

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. *See E.D. v. M.P.*, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011). Section 5328(a) of the Act provides, as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

We shall address Father's issues together, as they are interrelated. Father argues that the trial court erred in not setting forth its reasoning for reducing Father's physical custody time, in contravention of Section 5323(d) and Pa.R.C.P. 1915.10, when nothing in the record, the trial court's findings, or its analysis of the Section 5328(a) best interests factors would suggest or support a reduction in Father's physical custody time. Father's Brief, at 13-17.

Father asserts that the trial court did not award equally shared custody, which he requested.[1] *Id.* at 16. Father alleges that the trial court order significantly reduced his physical custody time by granting him one fewer weekend overnight visit during the school year and two fewer weekend overnight stays during the summer. *Id.* Father states that under the 2013 custody order, he had physical custody of Child every other

---

[1] Father asserts that the trial court should have awarded equally shared physical custody, as he requested in his modification petition. He fails to support his request for equally shared physical custody with any discussion and supporting statutory and case law, aside from arguing that the trial court improperly applied the primary caretaker doctrine to give Mother preferential treatment, and did not award equally shared physical custody. Thus, we consider the issue of whether the trial court should have awarded equally shared physical custody waived for purposes of our review. *See Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) (stating that a failure to argue and cite to pertinent legal authority in support of a claim constitutes waiver of the claim).

weekend Friday to Monday, and, prior to 2013, he had physical custody Saturday through Monday, because he does not work on Saturday and Sunday evenings. *Id.* at 16 n.1. Father complains that the trial court's most recent order takes away all of his Sunday to Monday overnight physical custody, despite the fact that he does not work on Sunday and Monday evenings, and is available all day on Sunday and Monday. *Id*. Father also alleges that the trial court reduced his weekday custody time from three days each week to one evening each week so that Child will go from seeing Father and his half-sibling, L.D., every other day to not seeing them for a week at a time on alternating weeks. *Id.* at 16. Father states that, although the trial court did add some weekday overnight custody in the summer, the net effect of the trial court's decision is a reduction of eleven overnights per year. *Id.* at 16-17. Father contends that this reduction amounts to a significant loss of overnight visits, as, under the existing order, Father had Child for only 78 of the potential 365 nights a year. *Id.* Father avers the trial court cut in half his number of days for custody time without an overnight visit during the week. *Id.* at 17.

In his related second issue, Father asserts that the trial court abused its discretion and failed to provide for Child's best interest when it refused to award the parties shared physical custody, and, instead, reduced Father's physical custody time. *Id.* at 13. Father argues that the trial court abused its discretion in according Mother's history of primary physical custody

significantly more weight than other factors under Section 5328(a). *Id.* at 21-22. Citing *M.J.M. v. M.L.G.*, 63 A.3d 331, 338-339 (Pa. Super. 2013), Father states that the primary caretaker doctrine is no longer viable and that under the Act, the trial court is required to analyze the parent's caretaking role as one of the 16 statutory best interest factors. *Id.* at 20-21. Father asserts that the trial court erroneously weighed primary physical custody in favor of Mother where Mother's primary physical custody was overnight and Father's custody of Child was on a daytime basis; thus, Father contends he performed more of Child's care than Mother. *Id.* at 21-22.

In his third issue, Father contends that the record contradicts certain Section 5328 findings made by the trial court. *Id.* at 13. Father claims that the trial court erred in failing to consider the parties' differing testimony regarding their accommodation of Child's participation in wrestling, as well as Father's encouragement of Child's relationship with Mother. *Id.* at 24. He, thus, urges that the trial court should have assigned neutral weight to the Section 5328(a)(1) factor above. *Id.* at 23-24. Regarding the aforementioned Section 5328(a)(3) factor, Father contends that the trial court should have found that Father performed more parental duties for Child, as Father spent more of Child's awake time caring for him, such that the court should have weighed the factor in favor of Father. *Id.* at 24-25. Father also challenges the trial court's finding with regard to the Section 5328(a)(5) factor, contending that the trial court should have found this

factor to be neutral, as the trial court found that both parents have strong family support that is more than adequate. *Id.* at 25. Father asserts that if the trial court had reassessed the factors he currently challenges, the custody best interest factors weigh in his favor. *Id.* at 25-26.

Finally, Father argues in the alternative that if this Court determines that the trial court's findings of fact and analysis of the Section 5328(a) best interest factors was appropriate, the trial court's findings of fact and analysis does not support the custody award with the reduction of Father's custodial time. *Id.* at 13, 26. Father urges that the trial court found that Child has a strong sibling relationship with L.D. and that Section 5328(a)(6) favors Father. *Id.* at 26. Father also states that the trial court found that two factors only slightly favored Mother under Section 5328(a)(1) and (a)(4). *Id.* At the same time, the trial court found that Father has fostered an environment in which Child is comfortable spending time with both parents and their respective families, and that Father has never interfered in the relationship between Mother and Child. *Id.* Father states that the trial court also found that he had strong family support that is more than adequate to provide all assistance needed in caring for Child. *Id.* Moreover, the trial court indicated that it wanted to give both parties extensive and meaningful time to be with Child. *Id.* at 26-27. Father contends that there is no logical or reasonable nexus between the determinations that the trial court made in its opinion and its custody order, in which it significantly reduced Father's

partial physical custody and impacted Child's time to spend with Father and Child's half-sibling, L.D. *Id.* at 27. Accordingly, Father argues that the trial court abused its discretion in reducing his custodial time. *Id.*

In its opinion and order, the trial court stated the following with regard to the Section 5328(a) best interest factors:

**FACTORS CONSIDERED WHEN AWARDING CUSTODY**

**[1]. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

Both parties have fostered an environment in which [] [C]hild is comfortable with spending time with both parents and their respective families. Neither party has in any way interfered with the relationship between the other party and [] [C]hild. [Mother] was a coach for [Child's] soccer team. She offered to resign her coaching role to allow [Father] to coach [Child]. She also made the decision to sit with [Father] at [Child's] wrestling matches so [] [C]hild would not feel torn between two parents. Both parents have done exceptionally well in fostering a good relationship between [] [C]hild and the other parent. [] Mother has done slightly better than [] Father for the reasons stated above. However, this factor only slightly favors [] Mother.

**[2]. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

There is no indication of abuse by either party. Both make concerted efforts to treat each other with respect in front of [] [C]hild.

**[2.1]. The information set forth in Section 5329.1(a) (relating to consideration of child abuse with protective services).**

There is no indication of any type of abuse. This factor is

- 13 -

neutral.

**[3]. The parental duties performed by each party on behalf of the child.**

Both parties are very active in [] [C]hild's life and take an active role in performing the duties as a parent to [] [C]hild. Because [] Mother has been the primary physical custodian of [] [C]hild, she has performed more parental duties for [] [C]hild during the first almost six years of life than [] Father. However, [] Father has made special effort to be a part of [] [C]hild's life and has performed all of the duties of a father. This factor is neutral.

**[4]. The need for stability and continuity in the child's education, family life and community life.**

[] Mother and [] [C]hild have resided in the same home, across the street from [] Mother's sister and within one quarter to one half mile of the Maternal Grandmother's and Grandfather's farm. []Mother's two brothers live close by. [] [C]hild has made friends and has cousins living in close proximity. When [Child] goes to school, he will go to the bus stop with his cousins and two neighboring friends. The area of [] Mother's home is in the same area where she grew up and has lived most, if not all, her adult life. [Child] has stability and family roots in the home in which he resides with [] Mother. [] Father has recently sold his home in Ellwood City and is looking to buy a home in the Laurel School District, where [] Mother and [Child] currently reside. While [] Father does not yet have a home in the Laurel School District, he has demonstrated a firm commitment to buying a home in the Laurel School District and it is anticipated that he will do so within the next several months or within the next year. The fact that [Child] has primarily lived in [] Mother's home all of his life and the home is surrounded by family and friends, is a factor that favors [] Mother.

**[5]. The availability of extended family.**

[] Mother has extended family including Mother, Step-Father/Adoptive Father, two brothers, a sister, and nieces, all of whom reside close to her home. [] Mother is close to her family and the extended family, especially [] Maternal Grandmother, to provide support and assistance to [] Mother in raising [Child]. [] Father, especially through his in-laws following his marriage to

[Stepmother], has family support, especially through [Paternal Step-Grandmother]. [] Father's in-laws, especially [Paternal Step-Grandmother], treat [Child] as one of their own and are available to help [] Father at any time that he needs assistance with his son. [] Father is married[,] and [Stepmother] is close to [Child][,] and [Child] has a good relationship with his step-mother and with his brother, [L.D.] Both parties have strong extended families. [] Mother's extended family is more extensive, but both have strong family support which is more than adequate to provide all assistance needed. [] Mother has a more extended network of family and therefore has a very slight advantage in this factor.

**[6]. The child's sibling relationships.**

[Child] has a very strong relationship with his brother [L.D.]. The time he spends with [] Father is important in maintaining this relationship. When [] Father buys a home in the Laurel School District, [Child] and his brother will be attending the same school. [] Father has already made a step in this direction by signing [L.D.] up for Laurel Soccer Programs and volunteering for a coach in those programs. The fact that [Child] has a brother living with [] Father is a factor in [] Father's favor.

**[7]. The well-reasoned preference of the child, based on the child's maturity and judgment.**

Neither party called [Child] as a witness. [Child] has a good relationship with both Mother and Father and has not expressed any preference. This factor is neutral.

**[8]. The attempts of a parent to turn the child against the other parent, except in case of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

Whatever the relationship between [] Mother and Father, both have taken great efforts not to do anything that would turn [] [C]hild against either parent. As a result, [Child] is happy and well[-]adjusted and enjoys an excellent relationship with both parents. This factor is neutral.

**[9]. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the**

**child adequate for the child's emotional needs.**

Both parties have done well in maintaining a loving, stable, and consistent and nurturing relationship with [] [C]hild. This factor is neutral.

**[10]. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

Both parties have done well in attending to the daily physical, emotional, development, educational and special needs of [] [C]hild. This factor is neutral.

**[11]. The proximity of the residences of the parties.**

[] Father is temporarily residing with [Paternal Step-Grandmother] and his future address has not been determined. It is anticipated that the parties will be residing in the same school district so that the distance between the residences will be a non[-]factor.

**[12]. Each party's availability to care the for the child or ability to make appropriate child care arrangements.**

In the summertime, [] Mother works 7:00 a.m. to 4:30 p.m. Monday through Thursday; and during the school year she works 8:00 a.m. to 4:00 p.m. Monday through Friday. [] Father works night shift and leaves the home between 7:30 p.m. and 8:00 p.m. returning home at 4:30-5:00 a.m. the next day. He works Monday night through Friday night [and] into Saturday morning. As a result, [] Father is more available to spend time with his son during the weekday daylight hours than is [] Mother. During the night time hours from 7:30 p.m. through the night and until the morning, [] Mother is more available for [] [C]hild's needs in as much as she is home and [] Father is not. Both parents are equally available to care for the child and make child care arrangements.

**[13]. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

Both parties have worked well together to cooperate in raising [Child]. The differences that have arisen have been relatively minor and are practically insignificant. Whatever differences the parties have, neither party brings [] [C]hild into any disagreement. This factor is neutral.

**[14]. The history of drug or alcohol abuse of a party or member of a party's household.**

There is no history of drug or alcohol abuse by either party or any member of their household.

**[15]. The mental and physical condition of a party or member of a party's household.**

Both parties and all members of their household are physically and mentally well[,] and this factor is neutral.

**[16]. Any other relevant factor.**

[Child] is five years and will soon be six. He has lived his entire life primarily in one house and has developed friends in the neighborhood[,] and [he] has relatives living close by. While he attended preschool, [Child] is about to embark into full time schooling in kindergarten in the Laurel School District. [] Mother has had primary physical custody all of [Child's] life and [] Father has been very actively involved in every aspect of [Child's] life, and will continue to do so into the future. Under the current custody arrangements, [Child] has formed a strong, healthy bond with both Mother and Father as well as with his brother and step-mother, and extended families on both sides. He is healthy and well[-]adjusted[,] and has developed healthy bonds under the current custody arrangement. [Child] should have as much stability and continuity as possible as he begins his educational endeavors. [] Mother has deep roots in her community and [Child's] current home with [] Mother provides definite stability and continuity. The fact that [] Mother is more available during weekdays in the evenings and at night and [] Father has more availability during the daytime, allows the [trial c]ourt to mold a [c]ustody [o]rder that gives both parents extensive and meaningful time to be with their son and for [Child] to have extensive time to be with his brother.

Trial Court Opinion, 9/21/16, at 2-7.

Rule 1915.10 of the Pennsylvania Rules of Civil Procedure provides as follows:

**Rule 1915.10.  Decision.  Order.**

(a) The court may make the decision before the testimony has been transcribed.  The court shall state the reasons for its decision either on the record in open court, in a written opinion, or in the order.

Pa.R.C.P. 1915.10.

Further, we have explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order."  23 Pa.C.S.A. § 5323(d).  Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal."  *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."  *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, , 68 A.3d 909 (Pa. 2013).  A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).  *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014).

In making a decision on whether to modify an existing custody order, the court must consider all of the Section 5328(a) factors.  *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011).  Our case law is clear that the amount of weight that a court gives to any one factor is almost entirely within its

discretion. ***See M.J.M.***, 63 A.3d at 339 (citation omitted) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."). However, the trial court is to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S.A. § 5328(a).

After our careful review, we find that the trial court properly filed its opinion pursuant to Rule 1915.10 and Section 5323(d) of the Act. The trial court did not abuse its discretion and did effectuate the best interest of Child in awarding primary physical custody to Mother, with partial physical custody to Father, and shared legal custody. The trial court's findings of fact in analyzing the Section 5328(a) factors are supported by testimony and evidence in the record. Although the trial court did not expressly make credibility determinations in its opinion and order, it implicitly did in reaching its conclusions on the points Father currently contests on appeal. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. ***See M.J.M.***, 63 A.3d at 339. As there were no issues related to the safety of Child in this case, we find no abuse of the trial court's discretion in its determination as to the weight to place on the Section 5328(a) factors. In providing for Child to spend more overnight time with Mother, the trial court set forth a balanced schedule that would provide Child with more stability now that he will be attending school full-time.

As we have previously stated:

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, giv[ing] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .

*King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (internal citation omitted).

Accordingly, we find no abuse of the trial court's discretion in rendering its partial physical custody schedule for Father as set forth in the September 21, 2016 custody order. *C.R.F.*, 45 A.3d at 443.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2017

- 20 -